IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JULIANE L. COLBY,<br><br>Defendant. | Case No. 21-06003-01-CR-W-DGK |

### GOVERNMENT'S SENTENCING MEMORANDUM

### I. INTRODUCTION

Sentencing is scheduled for Tuesday August 9, 2022, at 3:00 p.m., before United States District Court Judge Greg Kays. As more fully explained below, the Government recommends that the Court impose a sentence of 18 months' imprisonment, the high-end of the applicable Guidelines range, and three years of supervised release.

### II. FACTUAL SUMMARY

On February 8, 2022, the defendant, Juliane Colby, pleaded guilty, pursuant to a written plea agreement, to Count One of a four-count Indictment charging her with conspiracy to distribute heroin in violation of Title 21, United States Code, §§ 841(a)(1), (b)(1)(C), and 846. Colby admitted that in August 2019, she conspired with others to deliver heroin to an inmate in the Western Missouri Correctional Center (WMCC), a facility within the Missouri Department of Corrections (MDOC).

The defendant and Conspirator1 began a romantic relationship in 2017 while the defendant was working as a mitigation specialist for the State of Missouri Public Defender's Office. Conspirator 1 was represented by the Public Defender at this time and was an inmate at the

Jackson County Detention Center facing charges of first-degree murder. (PSR 4, ¶ 9.) While the murder case was pending, Conspirator 1 was discovered to have illegally possessed a cellular telephone that had been smuggled into the jail. The defendant and Conspirator 1 communicated with each other using the contraband cell phone in violation of Missouri law prohibiting the possession or use of cellular phones in correctional facilities. (PSR 4, ¶ 9.) As a result, the defendant faced criminal charges for acting in concert in possession of a cellular telephone in a correctional facility. (PSR 4, ¶ 9, and 8, ¶ 31.) She entered a diversion agreement which she successfully completed on May 14, 2019, and the charges were dismissed. (PSR 8, ¶ 31.)

According to WMCC visitor logs, in August 2019, the defendant regularly visited Conspirator 1 at WMCC where he was serving a sentence for his murder conviction. (PSR 4, ¶ 6.) WMCC records also revealed numerous telephone conversations between the defendant and Conspirator 1 in August 2019 during which they discussed a plan for the defendant to deliver heroin to Conspirator 1 inside the WMCC. During these calls, the defendant and Conspirator 1 also discussed a previous successful delivery of heroin. (PSR 4, ¶ 6.) These calls were monitored and recorded by the WMCC.

On August 9, 2019, corrections officers at the WMCC intercepted a large brown envelope addressed to Conspirator 2 that the defendant had mailed from a United States Post Office in Shawnee, Kansas, on August 6, 2019. The envelope contained eight small baggies with black tar heroin that were hidden by taping them behind the flap of the envelope. (PSR 3-4, ¶ 4.) The defendant marked the envelope as "Legal Mail" and also inserted numerous case pleadings and documents from Conspirator 2's previous Jackson County, Missouri, Circuit Court case along with photos of herself. The defendant also used a fictitious return address on the envelope for a law firm purportedly located in Harrisonville, Missouri. (PSR 3-4, ¶¶ 4-5.)

## III.  SENTENCING RECOMMENDATIONS

A. **Guidelines Summary**

As detailed in the final PSR, Probation Officer Tyler Cunningham determined the base offense level was 12 for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 under U.S.S.G. §§ 2D1.1(a)(5) and (c)(14) for an offense involving less than 10 grams of heroin. (PSR 5, ¶ 14.) Probation Officer Cunningham applied a two-level specific offense enhancement because the heroin was distributed into a prison, correctional facility, or detention facility pursuant to § 2D1.1(a)(5). (PSR 5, ¶ 14.) An additional, two-level role adjustment was applied pursuant to § 3B1.3 because the defendant abused a position of trust or used a special skill in a manner that facilitated the commission or concealment of the offense. (PSR 6, ¶ 18.)

The PSR awarded a three-level reduction for credit of acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and determined the total offense level was 13. (PSR 6, ¶¶ 22-24.)

Probation Officer Cunningham calculated a criminal history score of 0 establishing a criminal history category of I. (PSR 7, ¶¶ 28-29.) The resulting guideline range is 12 to 18 months of imprisonment. (PSR 13, ¶ 75.) The guidelines range for a term of supervised release is 3 years. (PSR 12, ¶¶ 56, 58.)

B. **Guidelines Disputes**

The defendant has filed an objection to the two-level role adjustment pursuant to § 3B1.3 that was applied because the defendant abused a position of trust or used a special skill in a manner that facilitated the commission or concealment of the offense. (PSR Addendum.)

As stated in the plea agreement, the parties are open to argue the application of any enhancement not specifically addressed by the plea agreement. (P.A. 8, ¶ 10(d).) The Government agrees with the application of this adjustment and concurs with the response to the objection

3

provided by the Probation Department. (PSR Addendum 1-2.) The government contends that this two-level enhancement is warranted because Colby employed a special skill obtained through her legal training and employment as an attorney when conspiring to deliver heroin to an inmate at the WMCC.

Under § 3B1.3, a defendant's offense level is enhanced by two points if the defendant either "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense...." USSG § 3B1.3. Special skill "refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." USSG § 3B1.3 cmt. n. 4.

The Eighth Circuit has considered this issue and held, "[t]he legal question is not whether the task could be performed by a person without special skills, but whether the defendant's special skills aided him in performing the task…" *United States v. Bush*, 252 F.3d 959, 962 (8th Cir. 2001) quoting *United States v. Covey*, 232 F.3d 641, 647 (8th Cir. 2000).

The Government would proffer at sentencing that FBI S.A. Scott Macke would state that legal mail is afforded a special standard of care and jail employees are trained to exercise caution to avoid violations of the Sixth Amendment. At the time of the offense, the Missouri Department of Corrections processed and delivered legal mail differently than regular mail to protect confidential attorney-client communications. Where ordinary mail would be subject to search by staff working in the mail room, the procedure for legal mail required that it be opened by an inmate's case manager in the presence of the inmate.

In *United States v. Keiser*, 578 F.3d 897 (8th Cir. 2009), Keiser, a North Dakota farmer and licensed commodities broker, promoted two fraudulent bank trading programs and was

ultimately convicted of multiple counts of conspiracy, wire fraud, and money laundering. Keiser argued the district court erred in applying the § 3B1.3 enhancement because there was no evidence that he used his commodities broker's license to significantly facilitate the commission or concealment of his offenses. *Id*. at 906. The Court rejected this argument and referred to *United States v. Bush*, 252 F.3d 959, 962 (8th Cir. 2001). The Court stated, "it is irrelevant that Keiser did not specifically use his commodities broker's license to commit the offenses. Like the defendant in *Bush,* Keiser's 'training and experience' and 'understanding of the intricacies' involved in the scheme facilitated his solicitation of victims and commission of the fraud." *United States v. Keiser*, 578 F.3d at 907.

Here, the defendant's prior legal training and work experience—including her work meeting with inmates as an employee of the Public Defender—were utilized in the effort to avoid correctional officers' detection of heroin by concealing it in an envelope marked with the term "legal mail." The envelope's markings also represented that the envelope was sent from a law firm and its contents included case pleadings and legal documents.

Therefore, the defendant utilized both her status and experience as an attorney to circumvent the normal and appropriate review of inmate mail. Specifically, using her experience—and marking her mailing as "legal mail"—the defendant sought to create a situation where her mailing would not face a level of review that would uncover the concealed heroin, so the use of the special skill enhancement is properly applied.

## C. Recommended Sentence of Imprisonment and Supervised Release

Based on the serious and dangerous nature of the crime committed and other sentencing factors set forth in 18 U.S.C. § 3553(a), the United States recommends that Colby be

sentenced to 18 months' imprisonment, the high-end of the Guidelines range, followed by a three-year term of supervised release.

The Government's recommendation for a sentence of the high end of the Guidelines range is based on careful consideration of the § 3553(a) factors but particularly the seriousness of the offense and the defendant's prior diversion agreement for less egregious but serious misconduct.

The delivery of any controlled substance into a correctional facility is serious but heroin in particular is notoriously addictive and dangerous. The use of heroin in a correctional facility is clearly counterproductive to an inmate's rehabilitation and its use would quite obviously reduce an inmate's potential to engage or participate in productive activities or programs. As recognized by the Eighth Circuit, when illegal drugs are smuggled into a correctional facility, "additional and unique risks of harm to inmates and corrections staff arise. For obvious reasons, the ability to control inmates and maintain order in a correctional facility is detrimentally affected when prisoners use illegal drugs." *United States v. Akers*, 476 F.3d 602, 606 (8th Cir. 2007).

The severity of the defendant's conduct is further exacerbated because she had been criminally charged and diverted by the Jackson County Prosecutor for similar conduct less than two years before the instant offense. Indeed, the defendant had completed her diversion agreement less than three months before escalating her criminal behavior from illicit communications with an inmate to smuggling heroin into the WMCC.

The defendant has no criminal history points in part because she has received diversion for two serious offenses. (PSR 7-8, ¶¶ 30-31.) The defendant misused prior leniency—a high-end guideline sentence of imprisonment will have a significant impact on this defendant. To her credit, the defendant responded promptly to the plea offer from the government and saved the

government valuable time and resources preparing for trial. She also has proven through her past education and work experience she can be a productive and successful member of society.

Under these circumstances, a high-end guideline sentence is sufficient but not greater than necessary to protect the public, promote respect for the law and provide adequate deterrence.

**D.     Recommended Sentence for Monetary Penalties**

1.     <u>Fine</u>

In light of the defendant's financial situation, the United States does not object to the Court waiving imposition of a fine.

2.     <u>Special Assessment</u>

The defendant's plea agreement requires payment of the $100 Special Assessment at the time of sentencing.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that this Court sentence the defendant to the high-end of the Guidelines range and three years of supervised release.

                                                Respectfully submitted,

                                                Teresa A. Moore
                                                United States Attorney

By     */s/ Brent Venneman*

                                                Brent Venneman
                                                Assistant United States Attorney

                                                Charles Evans Whittaker Courthouse
                                                400 East 9th Street, Room 5510
                                                Kansas City, Missouri  64106
                                                Telephone:  (816) 426-3122

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a copy of the foregoing was delivered on July 20, 2022, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Brent Venneman*

Brent Venneman
Assistant United States Attorney